**WARRICK et v KING et**

Ohio Appeals, 2nd Dist, Clark Co.

No. 409.   Decided Dec. 15, 1939.

Todd, Tehan & Lorenz, Springfield, for Almena A. K. Warrick, Robert J. Warrick, et. Lawrence E. Laybourne, as guardian and trustee.

E. V. Bope and J. A. Bope, Findlay, for Edwin Askom King, et.

A. G. Fuller and R. E. Fuller, Findlay, for appellant.

W. H. Griffith, Springfield, for Hamlin C. King, Lola Askom King, et.

## OPINION

By HORNBECK, PJ.

The appeals on questions of law are prosecuted by Lawrence E. Laybourne, as guardian and trustee, etc., and Edwin Askom King from a decree in favor of the plaintiffs and against the defendant, Edwin Askom King.

The suit was instituted by Almena A. K. Warrick, daughter, and Robert J. Warrick, grandson, of Robert Q. King, who died testate, November 17, 1917, leaving no widow. All of the heirs at law, next of kin, devisees, legatees and beneficiaries under said will in being were made parties defendant.

The petition seeks a construction of the will and a determination by the court of the estates and interests of those named in said will, the merging of all interests in a trust, the naming of a trustee, authorization to him to enter into a lease, as such trustee, with the Montgomery Ward & Company for the premises described as parcels 1 and 2 (the property described in Items II and III of the will) in the petition for a term of years upon the conditions, covenants, rentals and considerations as set forth in an exhibit attached to the petition, and further for authority to the trustee to borrow not to exceed $150,000.00, and to secure the same by a mortgage upon the real estate for the purpose of defraying in part the cost of the construction of a new building upon said premises; that the trustee be charged with the management, control and collection of the rents and revenues to be derived from the real estate during the period of the lease and to pay to all parties such portion of the returns from said property to which they may be entitled, and that upon the death of the life tenants the trustee be authorized to convey the premises to those lawfully entitled.

The petition specifically avers and the record discloses that the testator died November 17, 1917, that George Harvey Warrick, a grandson of testator, died unmarried and without issue on August 7, 1934; that Robert Leffler King, another son of testator, died testate in October, 1935; that by the terms of his will he devised and bequeathed all of his property, real and personal, to his wife, Lola Askom King, defendant.

Lawrence E. Laybourne was named guardian ad litem and trustee for the defense of minor defendants, unborn or after-born issue and any such persons as may be or become a "widow" within the terms and provisions or meaning of the will of Robert Q. King, deceased, and answered denying each and every allegation of plaintiffs' petition, and prayed the court to protect the interests of all for whom he was acting.

Defendant, Edwin Askom King, files his separate answer in which he avers that by the true meaning and intent of Item II of the will of Robert Q. King, he, together with his brother, Hamlin King, and sister, Jessie King Cave, children of Robert Leffler King, have vested remainder in fee simple, the enjoyment of which is postponed to the termination of the life estate of plaintiff and is subject to said life estate and the life annuity to defendant, Harvey J. Warrick.

Defendant, Lola Askom King, and her children other than Edwin Askom King, claim, and the court found, that she held under the will of her husband, Robert Leffler King, a vested remainder in fee simple of the real estate devised in Item II of the will of Robert Q. King. We do not find that this claim is set up in any pleading although it appears in a brief filed by counsel for Lola Askom King.

The court granted the prayer of the petition, determined the estates and interests of all parties defendants, defined the vested and contingent interests created by the will of Robert Q. King, and found for defendant, Lola Askom King and against Edwin Askom King on his separate answer.

Lawrence E. Laybourne as guardian and trustee, and defendant, Edwin Askom King, prosecute separate appeals. The appeal of the latter is noted as on questions of law and fact but proceeds as upon law only.

We have set forth the averments of the petition in the briefest manner possible and will of necessity mention later further averments which are supported by the evidence.

The appeal requires consideration and decision upon three propositions.

First—

Do the averments of the petition and the testimony in support thereof present a plan which is beneficial to the estate in its entirety and all holders vested, contingent or prospective, living and unborn?

Second—

Has the court the power and authority to make the decree prayed for in the petition?

Third—

Did the court err in its determination in favor of Lola Askom King and against Edwin Askom King as to the construction of Item II of the will of Robert Q. King?

We first consider the third question which involves Item II of the will of Robert Q. King, which we quote—

"**Item Second:** I give and devise to my daughter, Almena A. K. Warrick, to have and to hold the same during her natural life, the following described property, viz: My business property with street numbers sixteen-eighteen-twenty (16-18-20) South Limestone Street in the City of Springfield, Ohio, having a frontage of thirty-three feet and ten inches (33 ft. 10 in.) on said street, and having a depth one hundred ninety-eight feet (198), and being the first of two tracts described in a deed from Almena C. King, widow, and heirs of David King to Robert Q. King, recorded in Volume 52, page 525, Deed Records of Clark County, Ohio; and at her death or at my own death if I survive her, to Harvey J. Warrick, her husband, to have and enjoy the same during his natural life, one-fourth (¼) of the income of said property, payable annually, remaining after paying from the gross income the taxes, assessments, insurance, and expenses of necessary repairs, which payment of said one-fourth of said net income I hereby charge upon said real estate; and subject to said life estate of said Almena A. K. Warrick, and to said income charged upon said property in favor of said Harvey J. Warrick, I give and devise said property to my grandson, George H. Warrick to have and to hold the same during his natural life, and at his death to his issue, if any surviving him or no issue survive him, then to his widow, if any. In case my said grandson die without issue surviving him and leaving no widow, I give and devise said real estate to my two sons R. Leffler King and D. Ward King, subject to the above described life estate, and to said income charged upon said property as aforesaid, but if either of my said two sons should then be deceased, his issue shall take the share to which the parent, if living, would have been entitled hereunder."

It appears in the petition and is supported by the record that Robert Q. King, testator, had three sons and two daughters, two of whom predeceased him. At his death he left a daughter, Almena King Warrick, living, two sons, David Ward King, who died in February, 1920, and Robert Leffler King, who died in October, 1935.

The husband of Almena King Warrick is Harvey J. Warrick, living. George Harvey Warrick, a son of Almena King Warrick and Harvey J. Warrick, a grandson of the testator, died August 7, 1934, without issue and leaving no widow. As we have before stated Robert Leffler King, son of the testator, deceased, and his widow, Lola Askom King, have three children living. It will be noted that George Harvey Warrick died before Robert Leffler King, and it is the claim of his widow that upon George Harvey Warrick's death an estate vested in fee in Robert Leffler King which he could and did pass to his widow by his will.

Edwin Askom King claims that there is no vesting of the real estate described in Item II of the will until the termination of the precedent estate, namely, the life estate of Almena K. Warrick.

We are of opinion that two canons of constructions may be observed in determining the meaning of Item II of the will in the particulars under consideration. (1) That the intent, if possible, be determined from the four corners of the will. (2) That if there is uncertainty in the meaning of the language employed that construction be adopted which accomplishes the earliest possible vesting of the estate.

The item first creates a life estate in the daughter, Almena A. K. Warrick. Second, succeeding the first life estate establishes an annuity for life for Harvey J. Warrick in one-fourth of the income less certain fixed deductions. Third, following the life estate and life annuity and subject thereto a life es-

tate to George H. Warrick, grandson of the testator.

Testator then fixes the event upon which, the time when and the persons in whom the remainder shall vest. The event and the time the death of George H. Warrick, (1) if he shall die with issue, to the issue, or, (2) without issue to the widow, if any, surviving. (3) If neither issue nor widow survive. to the two sons, R. Leffler King and D. Ward King. (4) If either of the sons should be deceased his issue to take the share to which the parent, if living, would have been entitled.

It is our judgment that the testator intended that that portion of the estate devised to R. Leffler King and D. Ward King should vest upon the event of the death of George Harvey Warrick. Had the testator made no observation in the last sentence of the item that the real estate devised to his two sons was subject to the life estates and the income charged upon said property, their share would, notwithstanding, have been taken subject thereto. This qualification had been established in the preceding sentence.

In other words that portion of the item following "R. Leffler King and D. Ward King" which reads, "subject to the above described life estate, and to said income charged upon said property aforesaid" is but a parenthetical statement and is not intended to define or limit the vesting of the estate passing to the sons by the other language of the item. Let us quote the item omitting the parenthetical statement:

"In case my said grandson die without issue surviving him and leaving no widow, I give and devise said real estate to my two sons, R. Leffler King and D. Ward King, but if either of my said two sons should then be deceased, his issue shall take the share to which the parent, if living, would have been entitled hereunder." (Emphasis ours).

So reading this sentence, the time when and the event upon which the testator intended the interest of R.

Leffler King and D. Ward King to vest was upon the death of the life tenant, George H. Warrick. "Then" does not, in our judgment, refer to the above described "life estates and the income charged upon said property".

D. Ward King having died before George Harvey Warrick, that portion of the item vesting his share in his issue became effective. R. Leffler King having died after George Harvey Warrick the interest devised to him then became vested. We, therefore, affirm the judgment of the trial court in defining the remainder interest of R. Leffler King holding that it was vested in him in fee simple and passed by his will to his wife, Lola Askom King.

No other determination of the trial judge fixing and defining the interests of the parties under the will of Robert Q. King is challenged by brief. We, therefore, affirm the construction of the will as carried into the entry in the trial court.

We come then to consideration of the first and second questions propounded.

The first—Is the plan set out in the petition beneficial to all who have or may have an interest in the real estate described in the petition?

We have no hesitancy in answering this question in the affirmative. It appears that the land described in the petition, although well located and very valuable, has thereon buildings more than a hundred years old, and of such construction as to be a fire hazard. It is testified that the real estate would be more valuable if the improvements were removed. The net annual income for several years last past has been less than $1,000.00.

It is proposed to erect upon the real property a modern building costing approximately $300,000.00, suitable for the conduct of the business of Montgomery Ward & Company, $150,000.00 of the cost thereof to be financed by the obligation of the Trustee, named by the court and secured by a mortgage on the real estate described in the petition. The lease between the Trustee and Montgomery Ward & Company provides

for a net minimum income to the landlord of $4,000.00 for a period up to April 30, 1944, $5,000.00 thereafter, to April 30, 1949, and $6,000.00 thereafter, to April 30, 1956, with privilege of renewal at that time for ten years, and thereafter for ten year renewals extending the lease up to April 30, 1993, the annual rental for these renewal periods being $7,000.00.

The lessor is not bound for any part of the cost of the building, except that which is represented by the mortgage indebtedness which amount by annual payment by the lessee of interest and principal will be fully liquidated during the term of the lease. So that, at the end of the term of the lease, if its provisions be observed, the real estate leased will be free from mortgage encumbrance and have thereon the building which is to be erected.

The second question relates to the power and authority of a court of equity to grant the relief prayed in the petition. We answer this question in the affirmative with qualifications.

Counsel for the plaintiffs have approached the question on the basis of the general equitable jurisdiction of a court of equity, and urges that such power is broad enough to support the action and judgment of the trial court. If we assume that there is no statutory provision in Ohio for the suit, then, of course, it must be supported, if at all, upon broad equitable principles and tested to determine whether or not it comes within the purview of those cases which were or could be cognizable by a court of chancery. **Cram v Green, 6 O. 429.** Chancery jurisdiction generally falls under one of the maxims of equity, no one of which exactly meets the situation here presented. My Laylin, in his discussion on "equity", **16 O. Jur., page 41,** says:

"It is however, true in the abstract that whenever the right exists, and no other adequate remedy is available, equity has jurisdiction and will exercise it, unless prevented by some such supervening principle, and subject, of course, to the recognition of all equitable defenses."

The facts in this case obviously appeal to the conscience of a court of equity as meriting a decree, the effect of which insofar as human judgment can foresee will be beneficial to the holders of all estates and interests in the realty.

All parties in being who have any interest of any kind or character in the property involved are made parties and have been brought into court with the opportunity to oppose the approval of the plan set out in the petition. No opposition to the proposal appears from any adult party, on the contrary all are favorable. The answer, a general denial, of the guardian for the minor defendants and trustee for the holders of contingent interests is that which is proper under the law.

It is urged that all persons who hold or may hold an interest in the real estate, born or unborn, are bound either as parties or upon the doctrine of virtual representation.

It should be observed that all persons who take under Item II of the will of Robert Q. King are before the court. Item III of the will, which is parcel 1 of the proposed lease, in other particulars is identical with Item II, except that the life tenant, subject to the life estate of Almena A. K. Warrick and the charge of the annuity of Harvey J. Warrick is the grandson, Robert J. Warrick. All persons living who may take an interest under Item III of said will are likewise made parties. There is a possibility under Item III that there may be no contingent remainder-men to take as devisees, and the real estate will pass as intestate property. But if this should occur the issue, next of kin and representative at law of Robert Q. King, according to the family tree, are made parties. No court could in this proceeding bar one from his day in court who was not a party and not represented, if he hereafter come into an interest in the property. **Lessee of Irwin v Smith, 17 O. 226; McArthur v Franklin, 15 Oh St 485.**

Our examination of Item III of the will and of those who may take thereunder is convincing that all persons are made parties who are necessary to support the judgment in this case, and to bar afterborn persons who may take from successfully challenging it.

Robert J. Warrick, the life tenant, whose interest at his death passes to his widow, if any, and if none, to his issue, has a wife living and two children. The wife is made a party as are the children. If the wife becomes the widow, of course, she is bound by the judgment. Her relationship is such that she has the same interest to defend as any other who might become the widow of her husband. Likewise the children of the Warricks as a class would represent their issue. So that upon the doctrine of virtual representation, we are of the opinion that all who may take upon the death of Robert J. Warrick are represented either directly or otherwise. **Schneider v Wolf, 120 Oh St 524; Bennett v Fleming, 105 Oh St 352; Slaughter, Treasurer v Fitzgerald, et, 143,** Madison County, unreported, Nov. 23, 1939. **(30 Abs 599).**

We have examined the cases cited in the brief of counsel for the plaintiffs, namely, Gavin v Kurten (Ill.) 40 L. R. A., 776; Kent v Church of St. Michael, 18 L. R. A., 331; Trust Co. v Gluntz (N. J.) 181 A. T. L., 27; Downey v Doib (N. Y.) 8 L. R. A. (N.S.) and note; Drake v Frazer, 11 A. L. R. 766.

Simes Law of Future Interests—§792 —Judicial Sale without Aid of Statute— Conclusions—

"Certainly, in stating the scope of the power of sale, we may go this far: The power exists where there are minors or unborn persons to whom future interests have been given and all other interested persons consent to the sale and the sale and conversion will be beneficial to the minors and unborn persons. It would seem that we might go farther and say that the sale may be made even in the face of nonconsenting owners of future interests. Perhaps the sale might even be secured in the face of opposition of some possessory owners, but it is believed that the present state of the authorities does not justify the assertion that such is the law. As to the persons in whom the power of sale is vested, it seems that all possessory owners acting together would have it, at least unless the owner of a vested future interest should oppose them. Something in the nature of a showing of necessity is required, though the necessity need not be absolute."

Without discussing at length the cited cases we are satisfied to say that the judgment of the Common Pleas Court as to the premises described in parcel 1 of the proposed lease should be supported as a proper exercise of the general equity powers of the court, except only as to the vested right of Harvey J. Warrick to an annuity after the death of Almena A. K. Warrick.

We briefly discuss the application of §11935, GC. May §11935, GC, be the basis of the order of the court here under consideration? The section provides—

"Upon like proceedings (that is to say as provided in §11926, et seq.) the court may direct that such estates be leased for a term of years, renewable or otherwise, with or without an option on the part of the lessee, to purchase the estate leased, as appears most beneficial, and on such terms as appear just and equitable. The rents and profits shall be paid to the person or persons who might otherwise be entitled to the use and occupancy of the estate of the income thereof."

In the instant case the major purpose and effect of the plan which the court has approved is the execution of a long term lease. That which evoked the approval of the trial judge was the beneficial effect to all who are interested in the estate resulting from the proceeds of the lease. As a condition upon which the lease could be secured, the lessee required a modern building in which

to conduct its business and to accomplish this essential requirement it was necessary to incur the $150,000.00 indebtedness secured by the mortgage.

It would be advisable to modify the entry so that it would be found and adjudged that the execution of the lease as proposed would be beneficial to all parties in interest.

We come now to a discussion of the qualifications which we believe should be made in the judgment entry in the Common Pleas Court.

The land set out in Items II and III of the will is made up of separate tracts. The interests of all persons in Item II of the will, parcel 2 in the lease, are vested. That is to say, Almena A. K. Warrick has a life estate, Harvey J. Warrick, an annuity after this life estate, Lola Askom King that portion which she took under the will of her husband, Robert Leffler King, deceased, and the interests of the children and grandchildren of David Ward King, deceased. So that, there is no necessity for equity interposing a trust as to real estate, the title to all of which is vested in fee in persons who can act for themselves or for whom a guardian can be named to act. Likewise, there are vested interests in Item III of the will, parcel 1 of the lease.

The result here sought, namely, the execution of the lease and the creation of a debt secured by a mortgage is not the same as would attend the sale of the real estate. In that situation the fund created by the sale would take the place of the real estate, and it would be necessary to preserve all interests, that a trustee be named to hold the fund.

How, then, can the situation presented be not in a practical manner? (1) It is probable that if all the owners of the vested interests would file answers in which they joined in the prayer of the petition, that a trust would result, of which Mr. Todd would be the trustee, which the court could adjudge in connection with the trust for the contingent remainder-men.

(2) A simple method might be adopted wherein all of the holders of vested rights or interests would join in a power of attorney designating an attorney in fact, and specifically authorizing him to do and perform all things for them contemplated in the prayer of the petition. In this situation the attorney in fact, if the same person as the designated trustee for the contingent remainder-men, could execute the lease and the mortgage and bind all parties.

(3) On the other hand all of the holders of vested estates and interests could join as parties in the lease and in the mortgage, and they could by special designation name their agent who could be the same person as the trustee to act for them in all matters arising by reason of the lease.

The second and third plans seem to us to be preferable.

The lease which is attached to the petition and which is approved in the final entry in the Common Pleas Court should in our judgment embody certain further provisions.

The lease at no place sets out the cost of the proposed building to be erected. This sum is fixed in the brief of counsel for plaintiffs at from $250,000.00 to $300,000.00. The cost should be set forth. The minimum amount of money which the lessee is to be required to advance over and above the proceeds of the mortgage should be set forth. Provision should be made whereby the lessor would have opportunity and authority to determine that the full amount to be advanced by the lessee and the proceeds of the mortgage be expended in the construction of the building.

We recognize that the observations in this opinion go beyond those which would be required in a strict review of the judgment on appeal. However, we realize the difficulties confronting the parties in this case and are entirely sympathetic with the plan to bring about the execution of the lease.

We resolve in favor of the plaintiffs the principal proposition presented, namely, that the Common Pleas Court has the power as to the contingent remainder-men and all other non-vested prospective interests or estate to

name a trustee and to bind those for whom he was appointed by the execution of the lease and the mortgage in connection therewith.

With the modifications herein suggested, the judgment of the Common Pleas Court will be affirmed.

GEIGER & BARNES, JJ., concur.